**F I L E D**

PUBLISH

**APR 28 2004**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL RENE ROSS,

      Plaintiff - Appellant,

v.

COUNTY OF BERNALILLO,
COUNTY OF MCKINLEY,
CORRECTIONAL SERVICES
CORPORATION, MANAGEMENT &
TRAINING CORPORATION, NURSE
JEANNIE KING, JOHN DOES
(UNKNOWN OTHERS),

      Defendants - Appellees.

No. 02-2337

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-00-1497)**

---

Submitted on the briefs:[*]

Michael Rene Ross, pro se.

Patrick D. Allen, Yenson, Lynn, Allen & Wosick, P.C., for Defendant-Appellee
County of Bernalillo; Sean Olivas, Melanie Frassanito, Keleher & McLeod, P.A.,
for Defendant-Appellee County of McKinley; Emily A. Franke, Butt, Thornton &

---

    [1] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case
therefore is ordered submitted without oral argument.

Baehr, P.C., for Defendant-Appellee Correctional Services Corporation; Michele U. Estrada, Madison, Harbour, Mroz & Brennan, P.A., for Defendants-Appellees Management & Training Corporation and Nurse Jeannie King.

Before **EBEL, HENRY** and **MURPHY**, Circuit Judges.

**EBEL**, Circuit Judge.

In this prisoner suit, plaintiff Michael Rene Ross brings Eighth Amendment claims against several defendants alleging that a slippery shower floor was unreasonably dangerous and that he did not receive appropriate medical attention after falling in the shower and injuring his shoulder.  Applying a total exhaustion rule, the district court dismissed these claims without prejudice for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  We agree that a total exhaustion rule applies, and we AFFIRM.


## BACKGROUND

On November 29, 1999, Ross fell in the shower at the McKinley County Detention Center ("MCDC") and claims to have seriously injured his shoulder. According to Ross, he fell because the shower floor was smooth and concrete and because the shower was not outfitted with slip-resistant mats (mats that had previously been in the shower had been destroyed weeks earlier by other inmates).

On December 1, 1999, Ross filed a Sick Call Request in which he sought a medical appointment due to a shoulder injury he sustained as a result of his fall. On that same day, Ross submitted an Inmate Grievance Form in which he complained primarily about having been transferred to administrative segregation. In that grievance form, Ross also complained about a "lack of medical treatment for serious injury to shoulder." His grievance was rejected on the grounds that it presented a non-grievable issue. Nevertheless, Ross did see a doctor for shoulder treatment the next day, December 2, three days after his fall.

On December 6, Ross filed another Sick Call Request seeking pain medication for his shoulder injury. He filed additional Sick Call Requests or Inmate Medical Request Forms seeking further medical treatment, medication, or the like on December 9, December 14, December 23, February 21, 2000, March 2, April 17, May 10, May 28, June 12, and July 5. However, after December 1, 1999, he did not again seek to invoke the prison's grievance process with respect to any alleged inadequate medical care.

Also on December 6, 1999, Ross filed a Pre-Grievance Resolution Form reporting his November 29 fall, complaining that the shower floor was unsafe because it was smooth and lacked mats, and requesting that this problem be corrected. On December 8, the grievance officer responded that a shower mat had since been placed in the shower where Ross had fallen.

For the majority of the time relevant to this case, Ross was in the custody of MCDC. At the time of Ross' injury and until early January 2000, MCDC was operated by defendant Correctional Services Corporation ("CSC"), a private entity. In early January 2000, defendant Management & Training Corporation ("MTC"), another private entity, took over operation of the MCDC facility. Between February 4, 2000, and February 25, 2000, however, Ross was temporarily held at the Bernalillo County Detention Center ("BCDC").[2]

In October 2000, Ross brought this action pro se alleging two sets of Eighth Amendment cruel and unusual punishment claims. First, Ross claims that defendants County of McKinley, County of Bernalillo, and Correctional Services Corporation were responsible for maintaining an unreasonably unsafe shower facility. Second, he claims that all defendants were deliberately indifferent to his medical needs by failing to give him adequate treatment for his injury.[3]

The district court dismissed all of Ross' claims without prejudice for failure to exhaust administrative remedies as required by the PLRA. The district court concluded that "it appears that Plaintiff exhausted administrative remedies

---

[2] Accordingly, Ross' February 21 Inmate Medical Request Form was submitted to BCDC officials. His other sick call requests were filed with MCDC. Ross concedes that he never invoked any BCDC grievance procedures.

[3] Ross' complaint also originally alleged Eighth Amendment claims against the State of New Mexico and two individual doctors, as well as equal protection claims against all defendants. The district court dismissed those claims pursuant to 28 U.S.C. § 1915(e)(2), and they are not before us on appeal.

- 4 -

that were available to him on the issue of medical treatment" because he filed a post-injury grievance on December 1, 1999. However, the court found "no indication that Plaintiff initiated or exhausted administrative procedures" with respect to his dangerous conditions of confinement claims. Applying a "total exhaustion" rule, the district court held that because Ross did not exhaust all of the claims he seeks to bring in federal court, the PLRA requires that his entire action be dismissed without prejudice.

We AFFIRM, but for reasons different than those relied upon by the district court. We conclude that Ross did exhaust his dangerous conditions claims by lodging a Pre-Grievance Resolution Form. Because prison officials resolved Ross' complaint in his favor and there was apparently no other administrative relief available, Ross was not required to follow up with a formal grievance. However, we conclude that Ross failed to exhaust his medical treatment claims because most of the conduct he now complains of took place after he filed the grievance alleging a lack of medical treatment. Accordingly, that conduct was never brought to the attention of prison officials through the grievance process. Since we agree with the district court that the total exhaustion rule applies to suits subject to the PLRA's exhaustion requirement, we hold that the district court properly dismissed Ross' complaint in its entirety without prejudice.

**ANALYSIS**

I.  The PLRA's Exhaustion Requirement

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  It is designed to achieve this purpose by 1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; 2) filtering out some frivolous claims; and 3) creating an administrative record that facilitates review of cases that are ultimately brought to court.  Id. at 525.

This requirement applies fully when the plaintiff is a federal or state inmate held in a privately operated facility.  See Jernigan v. Stuchell, 304 F.3d 1030, 1033 (10th Cir. 2002) (approving dismissal of claims against an apparently privately operated prison under the PLRA, without explicitly discussing this issue).  As noted above, the PLRA prohibits prisoners in "any jail, prison, or other correctional facility" from filing suit under federal law until administrative remedies are exhausted.  42 U.S.C. § 1997e(a) (emphasis added).  The statute defines a "prisoner" as "any person incarcerated or detained in any facility who is

accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added). Nothing in the language or policy of the PLRA excuses prisoners in privately operated institutions from exhausting available administrative remedies.

In the instant case, CSC's grievance procedures first required inmates to "fill out a written Pre-Grievance Request Form providing as much detail as possible." If prison officials are unable to resolve the prisoner's complaint, the inmate must then file a Formal Grievance within three days of the occurrence. No appeal process was provided.

We now turn to whether Ross exhausted this administrative process with respect to his various Eighth Amendment claims. "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e.... [A] prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." Steele v. Fed. Bureau of Prisons, 355 F.3d 1204,

1211 (10th Cir. 2003). Our review of a dismissal under the PLRA for failure to exhaust administrative remedies is de novo. Jernigan, 304 F.3d at 1032.[4]

## II. Ross' Dangerous Conditions Claims

Ross complains that the MCDC shower was unreasonably dangerous because it was slippery and it did not contain a shower mat. He alleges that he was injured due to this dangerous condition on November 29, 1999. He claims to have exhausted his remedies as to his dangerous conditions claims by filing a Pre-Grievance Request Form on December 6, 1999. In response, prison officials moved a shower mat into the shower in which Ross had fallen. We agree that Ross sufficiently exhausted his administrative remedies as to these claims.[5]

### A. Timeliness

We note that the federal Courts of Appeals are divided over whether an untimely grievance is sufficient to exhaust a prisoner's administrative remedies

_____

[4] Our analysis is limited to exhaustion of remedies issues under the PLRA. We express no opinion as to the merits of Ross' Eighth Amendment claims.

[5] It is unclear why Ross seeks to hold the County of Bernalillo responsible for the conditions of the shower at MCDC. Nevertheless, we view this as a merits question, not an exhaustion of remedies issue. There were no remedies available for Ross to exhaust at BCDC with respect to these claims because at the relevant time Ross was an inmate at MCDC. The BCDC grievance procedure "is a right of persons detained at the Facility [BCDC]." Therefore, the relevant administrative remedies with respect to these claims were those offered by CSC at MCDC.

under the PLRA.  The Sixth Circuit has deemed an untimely grievance sufficient, reasoning that "if the state forgoes an opportunity to decide matters internally whether for internal time constraints or any other reason, the PLRA has nonetheless served its purpose, and the prisoner may proceed to federal court." Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003).  On the other hand, the Seventh Circuit has held that "[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim ... [T]hese include time limits." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002).

This dispute boils down to whether the PLRA's "exhaustion" requirement contains a "procedural default" rule.  In the habeas context, the Supreme Court has recognized that a petitioner who has failed to satisfy state procedural rules meets the "technical requirements for exhaustion" because there are no longer any state remedies available.  Coleman v. Thompson, 501 U.S. 722, 732 (1991).  Yet in order to "'protect the integrity' of the federal exhaustion rule" the Court has grafted a procedural default rule onto the habeas exhaustion requirement: "[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies...." O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (emphasis in original).[6]

---

[6]  The text of 28 U.S.C. § 2254 does not expressly refer to a procedural default requirement.  It generally requires that the petitioner have "exhausted the
(continued...)

The Court explained that the purposes of the exhaustion requirement "would be utterly defeated if the prisoner were able to obtain habeas review simply by 'letting the time run' so that state remedies were no longer available. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had <u>presented</u> his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it."  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000) (emphasis in original) (citations and internal quotations omitted).  This same policy applies in the PLRA context.  Allowing prisoners to proceed to federal court simply because they have filed a time-barred grievance would frustrate the PLRA's intent to give prison officials the opportunity to take corrective action that may satisfy inmates and reduce the need for litigation, to filter out frivolous claims, and to create an administrative record that would facilitate subsequent judicial review.  <u>Cf.</u> <u>Porter</u>, 534 U.S. at 524-25.

Accordingly, we join the Seventh Circuit in holding that the PLRA, like 28 U.S.C. § 2254, contains a procedural default concept within its exhaustion requirement.  <u>See</u> <u>Pozo</u>, 286 F.3d at 1025.  A prison procedure that is

---

[6](...continued)
remedies available in the courts of the State" and explains that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(b)(1)(A), (c).

- 10 -

procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted. Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." See Jernigan, 304 F.3d at 1033.[7]

Yet we conclude that Ross did not procedurally default his dangerous conditions claims in this case. Ross filed his Pre-Grievance Request Form seven days after his fall in the shower, but before the allegedly dangerous condition had been made safer. We need not address in the abstract whether Ross' complaint was timely because in this case the prison did actually consider it. Nothing in the

_____

[7] We find the Sixth Circuit's reliance on Oscar Mayer & Co. v. Evans, 441 U.S. 750 (1979), unconvincing. See Thomas, 337 F.3d at 728-33. Oscar Mayer held that the procedural default rule did not apply to a provision of the Age Discrimination in Employment Act stating that "no suit may be brought ... before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated." 441 U.S. at 753. The ADEA also provided that "[i]f any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts ... the proceeding shall be deemed to have been commenced ... at the time such statement is sent by registered mail to the appropriate State authority." Id.
First, Oscar Mayer dealt with a commencement requirement, not an exhaustion requirement. See id. at 761 (observing that this provision "does not stipulate an exhaustion requirement"). The Court emphasized that use of the term "commencement" implied that the grievant was not required to file within the time limits established by state law. Id. at 759. Furthermore, the ADEA expressly excluded the possibility of a procedural default bar for untimeliness by stating that commencement requires no more than filing or mailing a written and signed statement of the relevant facts to the appropriate location. Id. at 760.

record suggests that MCDC treated Ross' complaint as untimely; indeed, Ross received a favorable response and a mat was placed in the shower as he requested. If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court. See Pozo, 286 F.3d at 1025.

### B. Effect of a Favorable Outcome

Having determined that Ross properly invoked the first step of MCDC's grievance process with respect to his dangerous conditions claims, we turn to whether he was obligated to resort to step two of that process, filing a formal grievance. We hold that he was not required to do so because he was successful in the first stage of the grievance process, and nothing in the record suggests that there was any further relief whatsoever available through MCDC procedures.

In Booth v. Churner, the Supreme Court held that the PLRA requires a prisoner seeking only money damages to complete administrative processes that offer some sort of relief, albeit not the damages relief the prisoner wants. 532 U.S. 731, 734 (2001). However, prisoners need not engage in entirely fruitless exercises when no form of relief is available at all. "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." Id.

at 736 n.4.  In other words, the modifier "available" in the PLRA means that inmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief.  Id. at 738; cf. Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir. 2003) ("[T]here is no requirement [under the Immigration and Naturalization Act] to exhaust remedies where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.") (citations omitted).

Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases.  When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete.  See McGrath v. Johnson, 67 F. Supp. 2d 499, 510 (E.D. Penn. 1999) (exhaustion complete when a grievance was resolved in the prisoner's favor and there was no basis for him to appeal); Clement v. Cal. Dep't of Corr., 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002) (plaintiff was not required to exhaust further administrative appeals when he "had received all the relief that the prison administrative appeal system could provide"); Brady v. Attygala, 196 F. Supp. 2d 1016, 1021 (C.D. Cal. 2002) ("It would be a strange rule that an inmate who has received all he expects or reasonably can expect must nevertheless continue to

appeal, even when there is nothing to appeal.") (quotation omitted); Gomez v. Winslow, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [the plaintiff] had, in essence, 'won' his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit.").

Pursuant to CSC procedures, Ross began the grievance process by submitting a Pre-Grievance Resolution Form complaining that the MCDC shower was unreasonably dangerous because it lacked a shower mat. The prison responded by furnishing the shower with a mat, thus fully alleviating the problem Ross raised. It appears that CSC was unable to do anything more in response to Ross' complaint. In particular, nothing in the record indicates that money damages or any other retrospective relief was available through the prison's grievance process. Having received all the relief the grievance process could offer, Ross was required to do no more in order to exhaust his administrative remedies with respect to his dangerous conditions of confinement claims.

### III. Ross' Medical Treatment Claims

As explained above, the district court concluded that Ross exhausted his administrative remedies with respect to his medical treatment claims because he

filed a formal grievance on December 1, 1999, alleging a lack of medical care for his injured shoulder. We disagree.[8]

As an initial matter, we note that it is not entirely clear exactly what conduct Ross intends to serve as the basis of his Eighth Amendment inadequate medical treatment claims. In his complaint, Ross articulates a laundry list of problems he encountered in seeking to obtain appropriate medical treatment from the time of his injury on November 29, 1999, to July 2000. At a minimum, it seems clear that Ross is seeking relief for more than the fact that his shoulder was not treated between November 29 and December 1, 1999. His Eighth Amendment claims involve numerous incidents that took place after December 1 in which he alleges that prison officials were deliberately indifferent to his medical needs.

None of those post-December 1 incidents were brought to the attention of prison officials through any grievance process. The record is devoid of evidence that Ross made any use of the MCDC grievance procedures to complain of

---

[8] Although some of the defendants did not raise this issue on appeal, we may address it sua sponte as an alternative basis for affirming the dismissal of Ross' action without prejudice. See Steele, 355 F.3d at 1209-11.

- 15 -

inadequate medical care after December 1.[9]  Moreover, Ross concedes that he did

not invoke the BCDC grievance process while incarcerated there.

A grievance obviously cannot exhaust administrative remedies for claims

based on events that have not yet occurred.  Nor does a grievance exhaust

administrative remedies for all future complaints of the same general type.  Ross'

December 1 grievance did nothing to alert prison officials to any inadequate

treatment that might take place in the future.  Consequently, it did not further the

purposes of the PLRA's exhaustion requirement – allowing prisons to address

specific complaints internally to obviate the need for litigation, filtering out

frivolous claims, and creating a useful administrative record – as to the

inadequate medical treatment claims Ross now pursues in federal court.

We therefore conclude that the administrative remedies available to Ross

for his claims alleging inadequate medical treatment from November 30, 1999, to

July 2000 were not exhausted, and that these claims are barred by the PLRA.

---

[9]  Ross appears to argue that no grievance process was available with respect to his medical treatment claims because prison officials responded to his December 1 grievance by noting that he raised a "non-grievable issue."  However, this comment referred to the primary complaint raised in Ross' December 1 grievance, his "housing change from J Pod to Ad. Seg."  Under CSC grievance procedures, disciplinary actions and routine transfers of inmates are not grievable matters.  In contrast, the record indicates that some relief for inadequate medical treatment was available through CSC's grievance process.

IV.  Total Exhaustion

Finally, we turn to whether Ross' entire action should be dismissed under the PLRA because he failed to exhaust available administrative remedies as to his medical treatment claims.  The only Court of Appeals to have addressed this "total exhaustion" issue in a published opinion, the Eighth Circuit, has concluded that "[w]hen multiple prison condition claims have been joined ... § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."[10]  Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000).  We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in Ross' complaint required the district court to dismiss his action in its entirety without prejudice.

In the habeas context, the total exhaustion rule is well-established.  In Rose v. Lundy, the Supreme Court held that 28 U.S.C. § 2254 required district courts to "dismiss a petition for a writ of habeas corpus containing any claims that have not

---

[10]  We are aware of two Courts of Appeals that have mentioned this issue without resolving it.  See Ortiz v. McBride, 323 F.3d 191, 195-96 (2d Cir. 2003); Burton v. Jones, 321 F.3d 569, 577 (6th Cir. 2003).  District courts are divided as to whether the PLRA contains a total exhaustion requirement.  Compare, e.g., Smeltzer v. Hook, 235 F. Supp. 2d 736, 745 (W.D. Mich. 2002) (the PLRA does require total exhaustion) and Rivera v. Whitman, 161 F. Supp. 2d 337, 342-43 (D.N.J. 2001) (same) (abrogated on other grounds) with Scott v. Gardner, 287 F. Supp. 2d 477, 488 (S.D.N.Y. 2003) (rejecting the total exhaustion requirement in the PLRA context) and Johnson v. True, 125 F. Supp. 2d 186, 188-89 (W.D. Va. 2000) (same).

been exhausted .... leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." 455 U.S. 509, 510 (1982).[11]

The Court began by observing that the text of 28 U.S.C. § 2254 did not address the question of whether Congress intended to create a total exhaustion requirement. Id. at 516-17 ("[I]n all likelihood Congress never thought of the problem.")[12] Accordingly, the Court based its decision on the policies underlying the statutory provision. Id. at 517. Emphasizing comity principles, the Court reasoned that the total exhaustion doctrine would 1) encourage prisoners to seek full relief first from the state courts, thus giving states the first opportunity to

---

[11] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); Moore v. Schoeman, 288 F.3d 1231, 1235 (10th Cir. 2002) ("[I]ndividual, unexhausted claims may be denied, but only if the result allows the court to determine the entire petition on the merits.") (emphasis in original).

[12] At the time, 28 U.S.C. § 2254 provided:
"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
    (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."
See Rose, 455 U.S. at 516 n.9.

- 18 -

review claims of error, 2) create a more complete factual record that will aid federal courts in their review, and 3) relieve district courts of the difficult task of deciding whether multiple claims are severable. Id. at 518-19.

The Court next rejected the argument that the total exhaustion rule would act as a trap for unwary pro se litigants. Id. at 520. "[O]ur interpretation of §§ 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you have first taken each one to state court. Just as pro se petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement." Id. Moreover, the Court noted that even if a prisoner improperly submitted a petition containing one or more unexhausted claims, he or she would then be able to resubmit a petition containing only the exhausted claims. Id.

Finally, the Court rejected the argument that the total exhaustion rule might increase the burden on federal courts. To the contrary, the Court noted that such a rule would actually promote judicial efficiency by discouraging piecemeal litigation at least to some extent. Id. Under a total exhaustion rule "both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review." Id.

In determining whether the PLRA also contains a total exhaustion requirement, we follow a similar analysis. To start, the language in § 1997e(a) itself suggests a requirement of total exhaustion because it prohibits an "action" (as opposed to merely preventing a "claim") from proceeding until administrative remedies are exhausted.

Further, we believe the policies underlying the PLRA point toward a requirement of total exhaustion. In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints. See Porter, 534 U.S. at 524-25 (purposes of the PLRA); Rose, 455 U.S. at 418-19 (purposes of total exhaustion). It would facilitate the creation of an administrative record that would ultimately assist federal courts in addressing the prisoner's claims. See Porter, 534 U.S. at 525; Rose, 455 U.S. at 519. Moreover, it would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss. Rose, 455 U.S. at 519. Prisoners suing under § 1983, no less than habeas petitioners, can be expected to adhere to this straightforward exhaustion requirement. Cf. id. at 520. Finally, the total exhaustion rule will not increase the burden on federal courts, but will instead tend to avoid at least some piecemeal litigation. Cf. id.

The policies of the PLRA thus strongly support a reading of that statute that requires inmates to exhaust fully all of their claims before filing in federal court. If a prisoner does submit a complaint containing one or more unexhausted claims, the district court ordinarily must dismiss the entire action without prejudice.[13]

## CONCLUSION

Because Ross failed to exhaust all available administrative remedies as to some of the claims in his complaint, we AFFIRM the district court's decision dismissing his entire § 1983 action without prejudice.[14]

---

[13] "In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2).

[14] We also GRANT Ross' motion to proceed on appeal without prepayment of costs and fees and remind him that he is obligated to continue making partial payments until the entire fee has been paid.