**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HENRY NICK COLEMAN,

      Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER;
JOHN W. HICKENLOOPER, Mayor;
FRED J. OLIVA, Chief,

      Defendants - Appellees.

No. 06-1026
(D.C. No. 05-CV-01923 ZLW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.[**]

---

    Plaintiff-Appellant Henry Nick Coleman, a Colorado state prisoner

appearing pro se, appeals the district court's order dismissing his civil rights

complaint, 42 U.S.C. § 1983, without prejudice for failure to exhaust his

administrative remedies. We exercise jurisdiction pursuant to 28 U.S.C. § 1291,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

and we affirm.

Background

From January 8, 2005, until June 1, 2005, Mr. Coleman was an inmate in Building 8, Level A, of the Denver County Jail. During that time, Mr. Coleman alleges that he was subjected to several constitutional violations: he was denied an orderly and effective grievance procedure in violation of the Fifth Amendment; he was denied access to the jailhouse law library in violation of the Sixth Amendment; he was subjected to serious overcrowding and excessive force by deputies in violation of the Eighth Amendment; and he was subjected to racial discrimination at the hands of deputies in violation of the Equal Protection Clause of the Fourteenth Amendment.

Mr. Coleman's complaint also details one specific instance in which he claims he was denied his rights. On March 4, 2005, the toilets overflowed in his cell block, and waste water remained on the floor of his cell for two-and-a-half hours before deputies allowed him to clean it up. That night, Mr. Coleman alleges, the toilets overflowed again. This time, the deputies did not allow the inmates to clean their cells, instead using fans to dry the area over night. The next morning, Mr. Coleman requested that he be allowed to clean his cell before breakfast, but this request was denied; instead, he was forced to eat in his cell while the fans remained on, allowing airborne fecal matter and other waste to

contaminate his food. When he was finally allowed to clean his cell over an hour later, Mr. Coleman was not given any disinfectant to use. He alleges that these unsanitary conditions violated the Eighth Amendment prohibition against cruel and unusual punishment. See McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001).

According to Mr. Coleman's response to the magistrate judge's order to show cause, he attempted to file grievances starting in January 2005, but was informed that prison policy did not permit staff members to give inmates grievance forms. I R. Doc. 6. After obtaining a form from another inmate, Mr. Coleman filed his first grievance on February 7. It was never answered. Mr. Coleman followed up by sending a note to a jail official, Sergeant Grannum, on February 21, but again he received no response.

Following the sewer back-up on March 5, Mr. Coleman again attempted to file a grievance but was told by jail officials that grievances were not available. On March 15, Mr. Coleman wrote an intra-jail letter to the official in charge of Building 8, Major Wilson, complaining about the conditions in the building. He also sent a letter of complaint to Defendant Oliva on March 28, but he received no response to either letter.

On April 1, Mr. Coleman filed his second grievance. This time, he was told by Deputy Gonzo that a sergeant needed to sign the grievance and then a copy would be delivered to him. However, Mr. Coleman claims that he was never

given a copy of the grievance and no one ever responded to him.

Following an incident of racial discrimination, Mr. Coleman filed his third grievance on May 19. This time, he obtained a signed copy of the grievance, which he filed with his response to the Order to Show Cause. Mr. Coleman claims that Sergeant Grannum spoke with him on May 23 regarding his third grievance: "Sgt. Grannum made it clear to me that racial conduct does exist within the county system, even toward himself as a black sargent!, [sic] but that there was not a thing–nothing he could do about the treatment or conditions in building 8." Response, at 3.

Shortly after commencing this action, Mr. Coleman was ordered to show cause why the court should not dismiss his action for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). He responded on November 17 with the details of his attempts to file grievances. Nevertheless, on December 13, the district court dismissed his complaint, holding that although some of the claims contained in the complaint might be exhausted, not all of them were.

Discussion

Under the Prison Litigation Reform Act (PLRA), "'[n]o action shall be brought with respect to prison conditions' until a prisoner exhausts his available administrative remedies." Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1206

- 4 -

(10th Cir. 2003) (quoting 42 U.S.C. § 1997e(a)). This requirement is "mandatory for all inmate suits about prison life." Id., 355 F.3d at 1207 (quoting Porter v. Nussle, 534 U.S. 516, 524, 532 (2002)). Moreover, it is "a total exhaustion requirement, and . . . the presence of unexhausted claims in [the plaintiff's] complaint require[s] the district court to dismiss his action in its entirety without prejudice." Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004). A grievance is sufficient for exhaustion purposes if it contains enough detail so as to allow prison officials to take appropriate measures to solve the problem internally. Kikumura v. Osagie, –F.3d– , No. 04-1249, 2006 WL 2578805, at *11-12 (10th Cir. Sept. 8, 2006). The burden of pleading total exhaustion rests with the plaintiff, who must "attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." Steele, 355 F.3d at 1210 (alterations and quotation marks omitted).

We review de novo the district court's finding that Mr. Coleman failed to exhaust his administrative remedies. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). In so doing, we bear in mind that pro se pleadings are to be construed liberally. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, whether exhaustion occurred is highly dependent upon an inmate alleging historical facts of which he has knowledge and attaching the pertinent materials. Id. at 1109.

At the outset, we note that Mr. Coleman's allegations about the impediments he encountered in his attempts to file grievances are troubling and can, in some circumstances, make prison grievances unavailable. See Miller v. Norris, 247 F.3d 736, 738, 740 (8th Cir. 2001). The policy behind the PLRA–to "encourage prisoners to make full use of the inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints," Ross, 365 F.3d at 1190–cannot be accomplished unless correctional officials give inmates a genuine opportunity to lodge complaints and then address them. A court's role in determining whether an inmate's remedies have been exhausted is made substantially more difficult when grievances receive no response. Rather than confronting a full record with concrete evidence about whether the inmate pursued his claims through the appropriate channels, a court is forced to speculate about whether the inmate has sufficiently alleged a good-faith effort to utilize the grievance process.

In this case, Mr. Coleman filed three grievances with the Denver County Jail, wrote letters to jail officials and the Mayor of Denver, and even contacted the U.S. Department of Justice. According to Mr. Coleman, the only communication that received a reply was the third grievance, which–read generously–stated complaints about overcrowding, inadequate grievance procedures, racism, and unsanitary conditions. I R. Doc. 6 at 16-18. It also addressed three specific situations–one in which Mr. Coleman was locked in his

cell for 31 hours straight and not allowed to sharpen his pencil, another in which

he found hair in his food, and the toilet back-up described above. Id. at 16-18.

At the bottom of the third grievance form is a handwritten message from a

jail official (presumably Sergeant Grannum, based on the notation that the case

was assigned to him), which reads in full:

> Mr. Coleman building 8 functions under a schedule which was
> standardized under ACA guidelines. You are allowed to grieve
> whatever you feel is wrong-doing but unfortunately all procedures
> where [sic] properly followed. It is at the Deputies['] discretion as
> to when to let you come out of the living area to sharpen your pencil.
> If there was hair in your breakfast you should have notified the
> deputy on duty, as for time out of your cell there is a schedule to be
> followed which allows each tier to have out of cell time daily. Again
> ACA standards. I apologize for the plumbing system. That issue has
> been taking up with maintenance.

Id. at 16.

Based on the third grievance and the jail's response, it appears that the jail

agreed with Mr. Coleman concerning the toilet backup problem. When a

complaint is resolved in a prisoner's favor, there is no further possibility of relief,

and he has exhausted his remedies. Ross, 365 F.3d at 1187. Likewise, "the

failure to respond to a grievance . . . renders an administrative remedy

unavailable." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Unfortunately for Mr. Coleman, even the most generous reading of his third

grievance and his response to the order to show cause does not convince us that

he has carried his burden in showing that he exhausted **all** of his claims before

filing this lawsuit. Although we believe that some of his complaints–for example, his allegations of inadequate ventilation, excessive noise, and poor lighting–may be subsumed into his broader allegations of overcrowded and unsanitary conditions, his third grievance and his response to the order to show cause make no mention whatsoever of his claims of excessive force or denial of access to the jailhouse library. Both of these claims are clearly and conspicuously included in the complaint. See I R. Doc. 3 at 8 ("Being denied access to the legal library."), 10 ("Denver Sheriff's Deputies . . . [committing] countless assaults on the inmate population and the unrestrained use of 'Tasers' for any reason.").

As noted, the burden rests with Mr. Coleman to establish that he exhausted his administrative remedies with respect to both of these claims either by "attach[ing] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." Steele, 355 F.3d at 1210 (alterations and quotation marks omitted). This he has failed to do. The law is clear that "the presence of unexhausted claims in [the plaintiff's] complaint require[s] the district court to dismiss his action in its entirety without prejudice." Ross, 365 F.3d at 1189. Since Mr. Coleman has not established that he exhausted all of his claims, the district court's dismissal of his lawsuit without prejudice must be

AFFIRMED. Mr. Coleman's motion to proceed without prepayment of the appellate filing fee is GRANTED and he is reminded of his continuing obligation

to make partial payments until the entire fee has been paid.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge