**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 28, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————

CHAD EDWARD LEATHERMAN,

    Plaintiff - Appellant,

v.

CORECIVIC, INC.; MICHAEL
SIZEMORE; STEPHEN PAINE, JOHN
DOE, sued as: Defendants Does I - X,

    Defendants - Appellees.

No. 22-6084
(D.C. No. 5:21-CV-00672-D)
(W.D. Okla.)

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

———————————————————

Chad Leatherman, an Oklahoma inmate, appeals the district court's grant of

summary judgment to the defendants on his 42 U.S.C. § 1983 claims. The district

court determined the Prison Litigation Reform Act of 1995 (PLRA) bars his suit

because Mr. Leatherman did not exhaust administrative remedies. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

At the time of the allegations in this case, Mr. Leatherman was serving a custodial sentence at the Cimarron Correctional Facility in Cushing, Oklahoma.[1] Prison officials at Cimarron had removed the ladders to the top bunks of the beds in each cell.  Mr. Leatherman was forced to get into and out of his bunk without the assistance of a ladder.  In July 2018, while climbing down from the top bunk of his bed, Mr. Leatherman fell and broke his right tibia and fibula.

In April 2020, Mr. Leatherman began seeking administrative remedies related to the decision to remove the ladders and his subsequent injuries.  He filed two requests to staff.[2]  In one Request to Staff, he stated the absence of "ladders on the bunks" made it "unsafe [to] get[] on and off of [the] top bunk."  Aplt. App. at 140. He asked why the ladders had been removed and suggested "they or something [else] be used for safety reasons."  *Id.*  A staff member responded that the ladders were removed for security concerns.

In his second Request to Staff, Mr. Leatherman stated his leg was in "constant pain," he lacked full range of motion, and his surgeon had told him he would need a knee replacement; yet he had not been provided physical therapy.  *Id.* at 141.  He asked for physical therapy and pain management.  A staff member responded that

---

[1] Cimarron is a private prison operated by Defendant/Appellee CoreCivic, Inc.

[2] A Request to Staff is a document inmates submit to complete a step in the grievance process, described more fully in Section II.C.

Mr. Leatherman should place a sick call request so the facility could make Mr. Leatherman an appointment with a provider to address his concerns.

Mr. Leatherman followed up by filing two formal grievances in May 2020.[3] His grievances claimed he had broken his leg in two places "[slipping] off of [the] top bunk," had received no physical therapy, and "need[ed] full knee replacement." *Id.* at 142. He asked for "proper medical attention ASAP." *Id.* On June 11, 2020, the prison's acting warden returned the grievances without substantively addressing Mr. Leatherman's concerns, stating, "for the following reason(s): . . . No informal action, 'Request to Staff' response or evidence of submission attached[,] . . . [and] "[t]he [Request to Staff] and Grievance must be SPECIFIC as to the complaint, dates, places, personnel involved and how the inmate was affected." *Id.* at 143. The warden notified Mr. Leatherman he would be "afforded one final opportunity to properly submit [his] corrected grievance[s] within 10 days." *Id.* (typeface normalized).

Mr. Leatherman swore in a declaration that he submitted amended grievances, together with copies of his requests to staff, within 10 days of the warden's response. He further swore that following his submission of the amended grievances, he "continually followed-up with Cimarron's staff regarding the status of [his] pending

---

[3] There is only one grievance in the record on appeal. Mr. Leatherman swore in a declaration that he filed two grievances; but he did not describe the contents of the missing grievance. We thus only describe the grievance contained in the appellate record.

amended grievances," but he never received a response or an explanation for the lack of a response. *Id.* at 138.

At this point, Mr. Leatherman took no further administrative action and instead sued various prison officials and the private company that employed them in federal district court in Oklahoma under 42 U.S.C. § 1983. As relevant here, Mr. Leatherman brought claims alleging the defendants violated his Eighth and Fourteenth Amendment rights by failing to provide a ladder for his bunk or timely medical care for the injuries he sustained while climbing down from his bunk without a ladder.

The defendants moved for summary judgment, arguing Mr. Leatherman's suit was barred under the PLRA, 42 U.S.C. § 1997e(a), because he failed to exhaust administrative remedies. According to defendants, Mr. Leatherman began the grievance process but failed to complete it because he did not seek administrative review of the lack of response to his amended grievances. The magistrate judge agreed and recommended granting the motion for summary judgment. The district court adopted the magistrate judge's recommendation and entered final judgment for defendants. This timely appeal followed.

## II. Discussion

### A. Standard of Review

"We review the grant of summary judgment de novo . . . ." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). "Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted). "The summary judgment standard requires us to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Est. of Beauford*, 35 F.4th at 1261.

"We also review de novo the finding that Mr. [Leatherman] failed to exhaust his administrative remedies." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

## B. Legal Background

The PLRA provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (internal quotation marks omitted). To exhaust administrative remedies an inmate "must complete the administrative review process in accordance with the applicable

5

procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation and internal quotation marks omitted).

"[E]xhaustion of administrative remedies . . . means using *all* steps that the agency holds out . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis added) (internal quotation marks omitted). "[T]he prisoner's duty to exhaust available administrative remedies is complete" only "[w]hen there is no possibility of any further relief." *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004), *abrogated on other grounds by Jones*, 549 U.S. 199. As a result, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. at 648. There are at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not" available: (1) when a procedure is hindered by officers' inability or consistent unwillingness to provide relief, (2) when officials employ an administrative scheme "so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

## C. The Prison's Grievance Procedures

The Cimarron Correctional Facility adopted the grievance procedures promulgated by the Oklahoma Department of Corrections (ODOC). Under the ODOC's procedures, a prisoner must first seek to resolve any complaint by informally raising the matter with an appropriate staff member. *See* Aplt. App. at 87. If the complaint is not resolved informally, the prisoner must submit a Request to Staff. *See id.* at 87–89. If the matter remains unresolved, the prisoner may file a grievance with the reviewing authority, which is usually the prison's warden. *See id.* at 89–90.

The reviewing authority must respond to properly submitted grievances within 20 days. *See id.* at 91.[4] If "a grievance is submitted improperly," "[t]he inmate/offender will be given one opportunity to correct any errors and properly resubmit within ten (10) days of the date the inmate/offender is notified of the improper submission." *Id.* at 92–93. "If the inmate/offender fails to correct the errors or properly resubmit, the grievance will not be answered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process." *Id.* at 93. If the reviewing authority responds, "[t]he inmate/offender may appeal the reviewing authority's response to the grievance" to the applicable administrative reviewing authority (ARA). *Id.* "If there has been no

---

[4] "If the grievance cannot be answered within the 20 day period, the inmate/offender will be notified in writing, and the due date will be extended no more than an additional 20 days." Aplt. App. at 91.

response [to the grievance] by the reviewing authority within 30 days, but no later than 60 days, of submission, the inmate/offender may send a grievance to the ARA with evidence of submitting the grievance to the proper reviewing authority." *Id.* at 91. "The grievance submitted to the ARA will assert only that the inmate's/offender's grievance was not answered by the reviewing authority." *Id.* "The ruling of the ARA is final and . . . conclude[s] the internal administrative process available to the inmate/offender . . . ." *Id.* at 96.

## D. Analysis

Mr. Leatherman does not dispute that he failed to exhaust his administrative remedies by completing ODOC's administrative process. He maintains, however, "the District Court should have found [his] remedies were unavailable when prison officials failed to respond to his Grievance." Aplt. Opening Br. at 18. He contends this unavailability excused him from further exhaustion. *See Little*, 607 F.3d at 1250 ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

We reject this argument. In some circumstances, a prison official's "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). But that principle does not apply here for two reasons.

First, Mr. Leatherman's case involves the particulars of the ODOC's grievances procedures, which do not require the reviewing authority to respond.

8

According to the acting warden, Mr. Leatherman had filed deficient grievances, because he had not attached the applicable requests to staff and the grievances were not specific enough. According to ODOC's procedures, therefore, the reviewing authority had no obligation to respond if Mr. Leatherman "fail[ed] to correct the errors or properly resubmit." Aplt. App. at 93. Mr. Leatherman did not submit evidence demonstrating he corrected the errors from his initial grievances or properly resubmitted the grievances. *See May*, 929 F.3d at 1234 ("Although a defendant carries the burden of proving that the plaintiff did not exhaust his administrative remedies, once the defendant has carried that burden, the onus falls on the plaintiff to show that remedies were unavailable to him." (brackets and internal quotation marks omitted)).[5]

Second, as we observed in *Jernigan*, a reviewing authority's failure to respond does not render administrative remedies unavailable because the ODOC grievance procedures "provide[] that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review

---

[5] The record does not contain copies of the amended grievances. Mr. Leatherman's declaration states only that he "amended [his] grievances and provided them to . . . a Cimarron employee." Aplt. App. at 138. Mr. Leatherman's declaration does not state that he corrected the errors identified by the acting warden. And while his declaration states his "understanding . . . that Cimarron did not rule on [his] grievances because the Cimarron facility was closing and because of the ongoing COVID-19 Pandemic," *id.*, that statement does not establish that prison officials ever had any obligation to respond to his amended grievances under the ODOC's procedures.

authority." *Jernigan*, 304 F.3d at 1033. In other words, the ODOC grievance procedures are the applicable procedural rules and provide an inmate the ability to proceed with the remedial process notwithstanding an official's failure to respond. This distinguishes Mr. Leatherman's case from those where courts have held an official's failure to respond rendered further exhaustion unavailable because, unlike here, the inmate had no other options. *Cf., e.g.*, *Hayes v. Dahlke*, 976 F.3d 259, 271 (2d Cir. 2020) (deeming administrative remedies exhausted where "there simply were no further steps under the regulations that [the inmate] could have taken to obtain relief on . . . his grievances"); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding further administrative remedies were unavailable where "no evidence in the trial record . . . establishe[d] that [the inmate] could . . . have filed a grievance despite [prison officials'] failure to respond to his [informal resolution request]"); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (holding inmate exhausted available administrative remedies where "nothing in the record . . . indicate[d] that there [was] any . . . grievance procedure available to [the inmate] after the time set for a step-three grievance response"), *abrogated on other grounds as explained in Gonzalez v. Seal*, 702 F.3d 785, 787–88 (5th Cir. 2012).

Mr. Leatherman has not advanced any availing contrary argument. He maintains the ODOC's grievance procedures gave him the option to wait for the reviewing authority's response and did not compel him to grieve the reviewing authority's non-response to the ARA. Once the period for grieving the reviewing authority's non-response to the ARA ran, Mr. Leatherman further contends, "his

10

administrative remedies were unavailable while Cimarron continued to refuse to process [his] amended grievances." Aplt. Opening Br. at 24. We disagree.

The ODOC procedures provided Mr. Leatherman with an option to proceed in the administrative process, but he did not exercise that option. Under these circumstances, we cannot agree that ODOC officials are responsible for rendering unavailable his further access to administrative remedies. *Cf. Ross v. Cnty. of Bernalillo*, 365 F.3d at 1187 ("When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete."). That the grievance procedures used permissive language—i.e., by stating inmates "may" grieve a reviewing authority's non-response, Aplt. App. at 91—does not compel a different conclusion, as Mr. Leatherman insists. The entire grievance process at ODOC is similarly prefaced by stating inmates "*may* seek formal administrative decisions or answers to issues or complaints." *Id.* at 82 (emphasis added). The ODOC grievance procedures also use permissive language to qualify specific steps in the grievance process that are indisputably necessary for exhaustion. *See, e.g.*, Aplt. App. at 89 ("If a complaint is not resolved informally, the inmate/offender *may* submit a grievance . . . to the appropriate reviewing authority." (emphasis added)); *id.* at 93 (stating "[t]he inmate/offender *may* appeal the reviewing authority's response to [a] grievance" to the applicable ARA (emphasis added)). To sue in federal court, an inmate must exhaust every option made available under a prison's grievance procedures. *See Woodford*, 548 U.S. at 90 ("[E]xhaustion of administrative remedies . . . means using *all* steps that the agency holds out . . . ."

11

(emphasis added) (internal quotation marks omitted)).  And Mr. Leatherman did not exercise his right to grieve the reviewing authority's non-response.  *Cf. Jernigan*, 304 F.3d at 1033 (noting an inmate "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them").

In the alternative, Mr. Leatherman argues it is unclear whether his amended grievances were deficient under the grievance procedures, which he maintains is a disputed issue of fact and prevents summary judgment.  He argues that if the amended grievances were deficient, the grievance procedures themselves rendered further exhaustion unavailable.  After all, the grievance procedures  provide that when an inmate submits a second deficient grievance, "the grievance will not be answered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process."  Aplt. App. at 93.

We reject this argument for two reasons.  First, Mr. Leatherman has not shown a dispute over whether his amended grievances were deficient.  The record does not contain a copy of the amended grievances, and neither party takes a position on whether the amended grievances complied with ODOC's applicable rules.  The law places the burden on Mr. Leatherman to produce evidence that further exhaustion was unavailable, *see May*, 929 F.3d at 1234, and his inability to carry that burden here undermines his effort to defeat summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting a "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment").

12

Second, Mr. Leatherman cannot rely on his own failure to submit a compliant grievance form to excuse further exhaustion. As the Supreme Court has explained, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford*, 548 U.S. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. If Mr. Leatherman's amended grievances were deficient under the grievance procedures, then he did not properly exhaust his administrative remedies.

### III.  Conclusion

We affirm the district court's judgment.

Entered for the Court

Veronica S. Rossman
Circuit Judge
