**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KAMAL K. PATEL,

      Plaintiff - Appellant,

v.

L.E. FLEMING, Warden; DR.
MALCHER, FNU; JOHN DOE, Health
Service Administrator; JOHN DOE,
Health Service Personnel; JOHN DOE,
Associate Warden; FNU MORRIS;
FNU ROBERTS; TOM F. GOFORTH,

      Defendants - Appellees.

No. 04-6266

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 02-CV-1735-T)**[*]

---

Kamal K. Patel, pro se.

Robert G. McCampbell, K. Lynn Anderson, Office of the United States Attorney
for the Western District of Oklahoma, Oklahoma City, Oklahoma, for Defendants-
Appellees.

---

[*]After examining Appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument.

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiff Kamal K. Patel ("Plaintiff"), a prisoner appearing pro se, brings suit pursuant to 42 U.S.C. § 1983 challenging the conditions of his incarceration at two federal correctional facilities in Oklahoma. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM** the judgment of the district court dismissing Plaintiff's suit based on his failure to exhaust his administrative remedies. We **DENY** Plaintiff's motion to reconsider our order striking an issue related to a separate case that he raised in his opening brief. We also **DENY** as moot Plaintiff's motion to supplement the record on appeal. Finally, we decline to revisit our order disposing of Plaintiff's motion requesting that we force Defendants to provide Plaintiff with copies of certain filings, based on a response that Defendants filed to that motion after we had already ruled on it.

## I.    Background

Plaintiff was incarcerated at the Federal Correctional Institute ("FCI") in El Reno, Oklahoma, from January 2000 until December 6, 2000. Plaintiff was then transferred to the Federal Transfer Center ("FTC") in Oklahoma City, Oklahoma, where he was incarcerated until July 9, 2001. Plaintiff's claims in this lawsuit center on the alleged conditions of his incarceration at these two facilities. On

July 9, 2001, Plaintiff was transferred to a federal correctional facility in Texas. This lawsuit does not involve the alleged conditions of his incarceration in that Texas facility, or any other facility to which Plaintiff was subsequently transferred.

In this suit, Plaintiff claims that "his Eighth Amendment rights to medical care were violated by the deliberate indifference of prison officials at FCI El Reno and FTC Oklahoma City in failing to treat a pinched nerve in his neck." Plaintiff also claims that "his Eighth Amendment rights to be free from unreasonable exposure to secondhand smoke were violated by the actions of prison officials at FCI El Reno in requiring him to be housed in a smoking unit and in a cell with a chain-smoker despite [Plaintiff]'s requests for non-smoking housing."[1]

Plaintiff initiated this suit in December 2002 by filing a pro se complaint in the United States District Court for the Western District of Oklahoma.[2] On December 16, 2002, the district court referred this case to a magistrate judge for

---

[1] Plaintiff alleged below that "the disparate treatment between himself and the other inmates [at FCI El Reno] who were permitted to live in the non-smoking unit, despite being similarly situated, violated the Fifth Amendment's Equal Protection Clause." Plaintiff does not appear to assert this claim on appeal. Because we affirm the district court's dismissal of Plaintiff's suit based on his failure to exhaust his administrative remedies, we need not and do not evaluate whether Plaintiff waived his equal protection argument on appeal.

[2] Plaintiff amended his complaint in February 2003.

initial proceedings. On September 2, 2003, Defendants moved to dismiss the suit. On February 2, 2004, the magistrate judge recommended that the case be dismissed without prejudice based on Plaintiff's failure to exhaust his administrative remedies. On March 30, 2004, the district court adopted the magistrate judge's report and recommendation over Plaintiff's objections and dismissed the case. On August 9, 2004, Plaintiff filed a notice of appeal.

## II. Analysis

### A. Plaintiff's Failure to Exhaust Administrative Remedies

We review de novo a district court's dismissal of an inmate's suit for failure to exhaust his or her administrative remedies. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).[3] The Prison Litigation Reform Act ("PLRA")

---

[3]Although Plaintiff filed his notice of appeal prematurely, the appeal is nonetheless timely. The district court's order dismissing Plaintiff's claims was entered onto the docket on March 31, 2004. Because the district court did not set forth its judgment in a separate document, judgment entered for purposes of the Rules of Civil Procedure on August 30, 2004. See Fed. R. Civ. P. 58(b)(2)(B); Fed. R. App. P. 4(a)(7). Plaintiff was therefore required to file a notice of appeal prior to October 29, 2004. Fed. R. App. P. 4(a)(1)(B).

Plaintiff's notice of appeal was filed in the district court on August 9, 2004. However, because we may treat Plaintiff's notice of appeal as having been filed on August 30, after the entry of judgment in this case for purposes of the Rules of Civil Procedure, see Fed. R. App. P. 4(a)(2); FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 274-76 (1991), Plaintiff's appeal is timely.

In this case, we need not address whether the "prisoner mailbox rule," Fed. R. App. P. 4(c)(1), applies. We note, however, that an inmate filing a notice of appeal may obtain the benefit of the rule only if he or she submits a declaration or notarized statement in accordance with Rule 4(c)(1). See United States v.

(continued...)

states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  As we explained in Jernigan, "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."  304 F.3d at 1032 (citing Booth v. Churner, 532 U.S. 731, 740 (2001)).  Moreover, we have held that "the PLRA contains a total exhaustion requirement, and . . . the presence of unexhausted claims in [prisoner]'s complaint require[s] [a] district court to dismiss his [or her] action in its entirety without prejudice."  Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004); see also Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (per curiam) ("When multiple prison

---

[3](...continued)

Ceballos-Martinez, 371 F.3d 713, 717 (10th Cir.), cert denied, 125 S. Ct. 624 (2004).  The certificate of service that Plaintiff includes at the end of his notice of appeal falls short of Rule 4(c)(1)'s requirements: It is not a notarized statement, and it is not in technical compliance with 28 U.S.C. § 1746 because it excludes the phrase "under penalty of perjury."  We do not address whether this deficiency is fatal or excusable, cf. Denver & Rio Grande W.R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 848-49 (10th Cir. 1997) (citing "policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects" in considering non-jurisdictional aspect of Fed. R. App. P. 3), but we caution litigants that following the language of the statute is required to take advantage of the liberalized timing requirements of the prisoner mailbox rule.

condition claims have been joined . . . § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.").

To exhaust his or her administrative remedies, an inmate in a federal prison must complete a four-step process before filing suit. This process is laid out in the Code of Federal Regulations, as well as a parallel Bureau of Prisons ("BOP") Program Statement. See generally 28 C.F.R. § 542 (2004); BOP Program Statement 1330.13 (2002). First, an inmate usually must attempt to informally resolve his or her concerns with prison staff. 28 C.F.R. § 542.13. If this attempt fails, an inmate must submit a formal written Administrative Remedy Request within twenty days of the date on which the basis for the Request occurred. Id. § 542.14(a). If the Request does not provide satisfactory relief, an inmate must appeal the resolution of his or her Request to the appropriate BOP Regional Director within twenty days. Id. § 542.15(a). Finally, if an inmate disagrees with the Regional Director's decision, the inmate must appeal the decision to the BOP's General Counsel within thirty days. Id. § 542.15(a).

We have held that if an inmate does not comply with the time limits laid out in 28 C.F.R. § 542, he or she has not properly exhausted his or her administrative remedies. As we noted in Ross,

> the PLRA . . . contains a procedural default concept within its exhaustion requirement. A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted. Regardless of whether a prisoner goes through the

formality of submitting a time-barred grievance, he may not successfully argue that he has exhausted his administrative remedies by, in essence, failing to employ them.

365 F.3d at 1186 (citations, quotations omitted).

In this case, Plaintiff failed to exhaust his administrative remedies regarding his alleged exposure to secondhand smoke because he did not submit a written Administrative Remedy Request within twenty days of the date on which the basis for the Request occurred, as required by 28 C.F.R. § 542.14(a).[4] Plaintiff first filed such a Request regarding his alleged exposure to cigarette smoke on September 4, 2001. This Request was necessarily filed more than twenty days after the date on which the basis for the Request arose because Plaintiff was not incarcerated at FCI El Reno after December 6, 2000—approximately nine months before Plaintiff filed his Request.[5]

---

[4]Because we have held that the PLRA contains a total exhaustion requirement, see Ross, 365 F.3d at 1189, we need not address whether Plaintiff also exhausted his administrative remedies regarding the denial of medical treatment for his neck. We note, however, that Plaintiff first filed a Request regarding the denial of medical treatment for his neck on September 12, 2001. Plaintiff filed a second Request regarding this denial of medical treatment on September 26, 2002. Both Requests were filed long after Plaintiff was transferred from FCI El Reno and FTC Oklahoma City.

[5]Plaintiff acknowledges that his Request was filed outside the twenty-day filing period, stating in his brief that "[i]n relation to the allegations against prison staff at FCI El Reno, the appellant first filed his prison grievances well past the twenty day time period to file the initial formal grievance under Bureau of Prisons policy."

Plaintiff argues that his late filing of a Request should be excused because BOP policy establishes that the twenty-day filing deadline is flexible. The BOP does encourage Remedy Coordinators to be flexible in deciding whether to reject a Request that is filed late. See BOP Program Statement 1330.13(11)(b)(3).[6] However, while flexibility in accepting belated filings is encouraged, such flexibility is not required. See 28 C.F.R. § 542.17 ("The Coordinator at any level may reject and return to the inmate without response a Request . . . that . . . does not meet any other requirement of this part."); see also BOP Program Statement 1330.13(11)(a) (same); Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim . . . . [T]hese include time limits."). Thus Plaintiff's belated filing must not be excused on the grounds that the twenty-day filing deadline is flexible.

---

[6]BOP Program Statement 1330.13(11)(b)(3) provides:

When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, staff misconduct, even though the submission may be somewhat untimely.

Nor must Plaintiff's belated filing be excused based on the circumstances that he asserts necessitated the late filing. The period in which an inmate may file a Request may be extended

> [w]here the inmate demonstrates a valid reason for delay . . . . In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request . . . ; an extended period of time during which the inmate was physically incapable of preparing a Request . . . ; an unusually long period taken for informal resolution attempts; [or an] indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions . . . was delayed.

28 C.F.R. § 542.14(b).

In this case, Plaintiff explains that he did not file his Request earlier because he was "earnestly" attempting to resolve his concerns informally and did not want to "rock the boat." However, 28 C.F.R. § 542.14(b) vests the discretion to grant an extension in filing time with officials within the Bureau of Prisons, not an individual inmate. An inmate cannot unilaterally extend the twenty-day time limit for making a formal filing based on a desire to resolve his or her claims informally. In this case, no official within the Bureau of Prisons granted Plaintiff an extension. Plaintiff's own decision to rely on informal methods to resolve his concerns is not sufficient to extend the deadline for filing a formal Request. Moreover, we see no basis in the record that suggests that the Bureau of Prisons

- 9 -

should have granted Plaintiff an extension. Plaintiff cannot explain how he was attempting to resolve his concerns informally with the staff at FCI El Reno—much less explain why those informal resolution attempts took "an unusually long period," id.—when he had been transferred from FCI El Reno more than nine months previously and presumably had had no contact with the staff at FCI El Reno after his transfer. Thus, Plaintiff's contention that his delay in filing a Request was justified is without merit.

Finally, Plaintiff's belated filing cannot be excused on the grounds that the filing was considered on the merits despite its lateness. In Ross, we stated that "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." 365 F.3d at 1186. Plaintiff argues that his late filing of a Request regarding his alleged exposure to cigarette smoke should be excused under Ross because that filing was considered on the merits. Because the record reveals that the portion of Plaintiff's Request regarding his alleged exposure to cigarette smoke at FCI El Reno was never considered on the merits, Plaintiff's argument is without merit.

Plaintiff submitted his Request while incarcerated at FCI Bastrop in Texas. In the response to Plaintiff's Request, the Warden at FCI Bastrop made no mention of FCI El Reno, only addressing Plaintiff's Request as it related to FCI

Bastrop. Likewise, the Regional Director did not mention FCI El Reno in his response to Plaintiff's appeal of the Warden's determination. Finally, the response to Plaintiff's appeal to the Office of General Counsel states that "the Warden and the Regional Director adequately responded to the issues [Plaintiff] raised in [his] appeal." The response does go on to paraphrase the general policy of FCI El Reno regarding the incarceration of smokers and non-smokers, stating:

> At FCI El Reno, inmates are allowed to smoke inside their assigned cells only, with the cell door closed, on a designated smoking range. Staff at FCI El Reno . . . assign smokers and non-smokers to cells accordingly upon arrival to the unit. The sharing of a cell or living area between a smoker and a non-smoker will be avoided except when institution needs require housing of a smoking and non-smoking inmate in the same cell. . . . [I]nmates who are found to be in violation of smoking in non-smoking areas are subject to disciplinary action. Institution staff are making a reasonable effort to enforce the non-smoking policy.

However, this explication of FCI El Reno's general policies does not amount to addressing the merits of Plaintiff's claim regarding FCI El Reno. For example, the response did not explore whether (1) Plaintiff was housed in a smoking unit at FCI El Reno; (2) Plaintiff was housed in a cell with a chain smoker; (3) institution needs required housing Plaintiff in a smoking unit and/or in a cell with a chain smoker; (4) Plaintiff was exposed to secondhand smoke; or (5) Plaintiff suffered actual harms as a result of this exposure. Thus, it is clear that neither the Warden, nor the Regional Director, nor the Office of General Counsel "accept[ed] a belated filing, and consider[ed] it on the merits," thereby "mak[ing] the filing

- 11 -

proper . . . and avoid[ing] exhaustion, default, and timeliness hurdles in federal court." Ross, 365 F.3d at 1186.

**B.      Other Matters**

**1.      References to a Separate Case**

In Proposition IV of his opening brief in this case, Plaintiff argued that the district court made contradictory rulings in two separate opinions in two different cases, one of which gave rise to this appeal, and the other of which gave rise to Patel v. Regnier, No. 04-6291.  Plaintiff contends that in the opinion giving rise to this appeal the district court dismissed the action on the premise that the Plaintiff could not be deemed to have exhausted his administrative remedies because he filed a Request after he was transferred to a different prison instead of at the institution where the violations occurred.  Plaintiff argues that in the opinion giving rise to Regnier, by contrast, the district court stated that Plaintiff would be allowed to re-file his Request at a transferee prison because the BOP had indicated a willingness to let appellant pursue his grievances in that way.

Plaintiff later withdrew his appeal in Regnier, and on December 16, 2004, we struck anything related to the fourth proposition of Plaintiff's opening brief in this case.  On January 18, 2005, Plaintiff filed a motion asking us to reconsider our order striking anything related to the fourth proposition that he raised in his opening brief.  We rule in this opinion that Plaintiff failed to exhaust his

administrative remedies because he did not timely file a written Administrative Remedy Request. This ruling has nothing to do with the alleged inconsistency between the district court's decision giving rise to this appeal and the court's decision giving rise to Regnier that Plaintiff highlights in the fourth proposition of his opening brief. Accordingly, we have no occasion to revisit our order of December 16 striking anything related to the fourth proposition that Plaintiff raised in his opening brief and **DENY** Plaintiff's motion to reconsider.[7]

Plaintiff also moves to supplement the record to add the district court opinion giving rise to Regnier. In light of our denial of Plaintiff's motion to reconsider, we **DENY** this motion to supplement the record as moot.[8]

### 2.     Copies of Filings

On December 20, 2004, Plaintiff moved for an order forcing Defendants to provide a copy of their "Reply" brief and assorted other materials. We ruled on

---

[7]We also note that because Plaintiff voluntarily dismissed his appeal in Regnier, we do not have before us the record in that case. Even if we were inclined to revisit our December 16 order—which we are not—we would have no basis for determining whether the district court's order giving rise to this appeal is inconsistent with the order giving rise to Regnier.

[8]To the extent that there are other motions related to the interplay between this appeal and Regnier that remain pending before us, we **DENY** those motions in light of our disposition of this appeal. This includes, but is not limited to, Plaintiff's response to Defendants' motion to strike the fourth issue raised by Plaintiff in his opening brief. That response was referred to the merits panel after the clerk's office had already issued the December 16 order striking anything related to the issue.

this motion on December 21, 2004. On December 28, 2004, Defendants submitted a response to Plaintiff's December 20 motion. Because we have already resolved the issues addressed in Defendants' motion, we decline to revisit our December 21 order disposing of Plaintiff's motion requesting that we force Defendants to provide Plaintiff with copies of certain filings.

## III.    Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing Plaintiff's suit based on his failure to exhaust his administrative remedies. We **DENY** Plaintiff's motion to reconsider and **DENY** as moot Plaintiff's motion to supplement the record on appeal. Finally, we decline to revisit our order disposing of Plaintiff's motion requesting that we force Defendants to provide Plaintiff with copies of certain filings.