FILED
United States Court of Appeals
Tenth Circuit

June 24, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID SAVOY THOMAS,

Plaintiff - Appellant,

v.

U.S. BUREAU OF PRISONS;
CALVIN L. POLLAND; C.B.
COLLINS; R. MILLER; G.
DRENNAN; PAULA PRICE;
HECTOR A. RIOS, JR.; J.E. GUNJA;
UNITED STATES OF AMERICA,

Defendants - Appellees.

No. 07-1426

D. Colo.

(D.C. No. 06-CV-00063-WYD-CBS)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

David Savoy Thomas filed suit against various prison officials pursuant to

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388

(1971), alleging a violation of the Eighth Amendment.[1]  The district court entered

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]  Thomas alleged other state and federal law claims which the district court either dismissed or resolved in favor of Defendants.  Thomas does not complain about the resolution of these claims.

summary judgment in favor of the Defendants because Thomas failed to exhaust administrative remedies. Thomas, appearing *pro se*,[2] appeals from that decision. We affirm.

## I. BACKGROUND

In late November 2003, Thomas, while incarcerated at the United States Penitentiary in Florence, Colorado, became ill with flu-like symptoms. He was seen by a prison doctor who prescribed pain medication and medication to help him sleep. Over the next few days Thomas' condition worsened. He allegedly made several requests to see the prison doctor which were refused. On December 1, 2003, he was seen by the prison's physician assistant who told him to continue taking his prescribed medication and placed him on bed rest for one week. Thomas' condition continued to deteriorate. On December 6, 2003, the prison doctor had Thomas transported to Saint Thomas More Hospital for further evaluation. At the hospital, he was diagnosed with viral pneumonia and was returned to the prison. The next day he was taken to the Parkview Hospital intensive care unit. Testing showed the presence of multiple pulmonary emboli (blood clots). He was discharged from the hospital on December 24, 2003.

Four months later, on April 28, 2004, Thomas filed an "Inmate Attempt at Informal Resolution" with prison staff alleging prison medical officials had delayed

___

[2] We liberally construe *pro se* pleadings. *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1187 (10th Cir. 2003).

and denied him adequate medical care prior to his December 7, 2003 hospitalization at Parkview. When informal resolution attempts failed, Thomas filed an Administrative Remedy Request with the warden. The Request, dated May 6, 2004, was not received by the warden until May 11, 2004. The warden denied the request as untimely because it was not filed within twenty days of the triggering event as required by the prison grievance procedure. Thomas' subsequent appeals to the prison's regional and national offices were denied.

Thomas filed the instant action against various prison officials alleging they improperly delayed and denied him adequate medical care in violation of the Eighth Amendment. Defendants filed a motion to dismiss (which the court converted to a motion for summary judgment) arguing, *inter alia*, Thomas failed to exhaust administrative remedies. The district court granted the motion because Thomas' Administrative Remedy Request was untimely and thus he failed to exhaust. It rejected Thomas' argument that it was not feasible for him to timely file due to complications arising from his illness.

## II. DISCUSSION

Thomas argues the district court erred by making improper credibility determinations concerning whether his illness prevented timely filing. He also asserts exhaustion of administrative remedies was not required because his case raised constitutional and other legal issues the prison was not competent to resolve.

We review a grant of summary judgment de novo, considering the factual record and reasonable inferences to be drawn there from in the light most favorable to the party opposing summary judgment. *Rohrbaugh v. Celotex Corp.,* 53 F.3d 1181, 1182-83 (10th Cir. 1995). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review de novo the district court's finding of failure to exhaust administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

> The Prison Litigation Reform Act (PLRA) imposes a mandatory exhaustion requirement on inmates challenging prison conditions in federal court:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1281 (10th Cir. 2006). An inmate's failure to exhaust is an affirmative defense and the burden is on the defendant to prove the failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007); *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

To exhaust administrative remedies, a federal inmate must complete a four-step process before filing suit. First, "an inmate shall . . . present an issue of concern informally to staff." 28 C.F.R. § 542.13(a). If informal resolution is

unsuccessful, the inmate must submit a formal written Administrative Remedy Request to the warden. *Id.* §§ 542.13-.14. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request . . . is 20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). If the inmate is not satisfied with the warden's response to his Request, he must appeal to the appropriate regional director within twenty days from the date of the warden's response. *Id.* § 542.15(a). Finally, if the inmate disagrees with the regional director's decision, the inmate has thirty days to appeal to the prison's General Counsel.[3] *Id.*

The district court correctly determined Defendants were entitled to summary judgment based on Thomas' failure to exhaust his administrative remedies. Under the prison grievance procedure, Thomas was required to submit a written Administrative Remedy Request within twenty days of the date on which the basis for the request occurred—the alleged delay and denial of adequate medical treatment by prison officials prior to his hospitalization on December 7, 2003. Even disregarding the time he spent in the hospital (December 7 through December 24, 2003), Thomas' May 6, 2004 Request was untimely and does not

---

[3] The prison grievance procedure allows an inmate to seek an extension of time in which to file an Administrative Remedy Request or an appeal. To obtain an extension, he must demonstrate "a valid reason for delay" which includes, *inter alia*, "an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal." 28 C.F.R. § 542.14(b). Thomas never sought an extension of time to file his Request.

satisfy the PLRA's exhaustion requirement.  *See Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (a prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal;" the PLRA requires the "*proper* exhaustion of administrative remedies") (emphasis added); *Patel v. Fleming*, 415 F.3d 1105, 1109-10 (10th Cir. 2005) (concluding federal inmate had failed to exhaust administrative remedies because he failed to file Administrative Remedy Request within twenty days of the date on which the basis for the Request occurred).

The district court did not make credibility determinations.  It merely rejected  Thomas' conclusory and self-serving statements in his affidavit and pleadings that it was not feasible for him to attempt informal resolution of his grievance until April 28, 2004, due to complications associated with his illness. Thomas never identified those complications let alone described how those complications prevented him from timely complying with the prison grievance procedure.  Such conclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment.  *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) ("While an affidavit is certainly an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements."); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (stating the affidavits of a party opposing summary judgment

"must . . . set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient"); *Conaway v. Smith*, 853 F.2d 789, 792 n.4 (10th Cir. 1988) ("[A] nonmoving party may not rely merely on the unsupported or conclusory allegations contained in pleadings to rebut the movant's factual proof in support of the motion for summary judgment.").

In the district court, Thomas referred to his medical records dated November 28, 2003, to March 10, 2004, to support his allegation that he suffered complications as a result of his illness and these complications prevented him from timely complying with the prison grievance procedure. These reports are not helpful to him. The February 6, 2004 medical record reported Thomas had experienced episodes of shaking and weakness in his arms and legs but "[o]therwise he feels well." (R. Vol. I, Doc. 43 at 19.) Similarly, the March 10, 2004 record merely addressed the need for Thomas' lab results and decreased the dosage of his medication.[4] Assuming, *arguendo*, Thomas suffered complications

---

[4] As the district court correctly noted, Thomas failed to show this medication, which was prescribed to prevent the formation and movement of blood clots, inhibited him from timely complying with the prison grievance procedure. The medication's possible side effects included pain, swelling, and unusual or increased bleeding and bruising—none of which would necessarily incapacitate a person from filing a grievance for over four months. And, as the court determined, none of these side effects *actually* prevented Thomas from filing grievances, as evidenced by the inmate requests he filed during this time period. While Thomas alleged he relied on other inmates to assist him with those inmate requests, he did not explain why he could not have relied on those same inmates to assist him with the grievance procedure. Moreover, Thomas was medically cleared on December 24, 2003, for assignment to non-strenuous work duties.

which impaired his ability to initiate the grievance procedure until March 10, 2004, his Administrative Relief Request in May 2004 would still be untimely.

Finally, we reject Thomas' argument that exhaustion was not required because his grievance raised issues the prison was not competent to resolve. A prisoner must exhaust administrative remedies even where the relief sought cannot be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 734, 741 n.6 (2001) (stressing "we will not read futility or other exceptions into [the PLRA's] exhaustion requirements where Congress has provided otherwise").

**AFFIRMED**. Thomas' motion to proceed *in forma pauperis* on appeal is **DENIED**. Thomas is obligated to continue making partial payments as directed by this Court's January 15, 2008 order until all fees have been paid.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge