**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

JEMAINE MONTEIL CANNON,

      Plaintiff - Appellant,

v.

CHESTER MASON, Health Services
Administrator; STWEART, D.O., and
NANCY COPPLE, LPN,

      Defendants - Appellees.

No. 08-7117
(E.D. Okla.)
(D.Ct. No. 6:08-CV-00189-FHS-SPS)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

_____

The parties have waived oral argument. See Fed. R. App. P. 34(f); 10th

Cir. R. 34.1(G). We accept this case for submission on the briefs.

Jemaine Monteil Cannon, an Oklahoma death row inmate proceeding *pro*

*se*[1] and in forma pauperis, appeals from the district court's dismissal of his civil

_____

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation -- (unpublished). 10th Cir. R. 32.1(A).

[1] We liberally construe Cannon's *pro se* filings. *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

rights complaint for failure to exhaust administrative remedies. On the record before us, we cannot agree that Cannon did not exhaust his administrative remedies. Nevertheless, because Cannon has not alleged the denial of constitutional right, we affirm.

## I. BACKGROUND

Cannon allegedly suffers from a number of chronic illnesses for which he is prescribed various medications. On January 17, 2008, Cannon completed a request for medical services. On February 12, 2008, while housed in the Oklahoma State Penitentiary, he was seen by Dr. Raymond Stewart who prescribed three medications. On February 13 or 17, $10.00 was deducted from his inmate trust fund account for these services.

Believing he could not be charged for medical services relating to his chronic illnesses, Cannon filed a "Request to Staff" on March 5, 2008, requesting $10.00 be refunded to his account. On March 10, 2008, Nancy Copple, a licensed practical nurse at the prison, responded to Cannon explaining he had been charged $2.00 for the February 12 doctor's visit and $2.00 for each of the three medications prescribed during that visit. Because these charges totaled $8.00, Cannon had been overcharged $2.00. However, because Cannon was not properly charged $2.00 for the medication he was prescribed during a March 4, 2008 clinic visit, the overall deduction to his account was correct.

On April 19, 2008, Cannon filed a grievance with the medical appellate

review authority, alleging he submitted a grievance on March 18, 2008, to Chester Mason, Correctional Health Services Administrator, but it was never answered. He requested a response to the March 18 grievance and attached it to the April 19 grievance. The attached March 18 grievance sought a $10.00 refund to his trust fund account based on his being improperly charged for the medical services and medications he received on February 12. On May 20, 2008, the medical review authority returned the April 19 grievance to Cannon unanswered for failure to comply with the prison's grievance procedure.

Seven days later, Cannon filed a complaint under 42 U.S.C. § 1983 against Mason, Dr. Stewart and Copple alleging their charging him $10.00 for medical services and medications relating to his chronic illnesses constituted cruel and unusual punishment under the Eighth Amendment. Defendants filed a motion to stay proceedings and requested the court to order the Oklahoma Department of Corrections (ODOC) to submit a special report pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (approving district court's order directing prison officials to conduct an investigation of the alleged incident and report its findings to the court). The district court granted the motion and directed the ODOC to file a special report.

The ODOC filed a special report stating its investigation of Cannon's allegations revealed departmental procedures had been followed. Defendants filed a motion to dismiss under Rule 12(b)(1) and (b)(6) of the Federal Rules of

Civil Procedure or in the alternative a motion for summary judgment. Relevant here, they argued dismissal was appropriate because Cannon had not properly exhausted his administrative remedies and he failed to demonstrate they violated his Eighth Amendment rights. As to the exhaustion argument, Defendants pointed to an affidavit from Mike Murray, the Nurse Manager of the ODOC's Medical Services Administration, wherein he avers Cannon had failed to properly and timely file a grievance appeal as required by the ODOC's grievance procedure. They also referred to Mason's affidavit wherein he states the prison's grievance log does not show a grievance having been received from Cannon concerning the issues presented in his complaint.

The district court granted Defendants' motion to dismiss/motion for summary judgment based on Cannon's failure to exhaust his administrative remedies. This timely appeal followed.

## II. DISCUSSION

We review de novo the district court's dismissal for failure to exhaust administrative remedies. *Patel v. Fleming*, 415 F.3d 1105, 1108 (10th Cir. 2005). The Prison Litigation Reform Act (PLRA) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires "proper exhaustion," that is,

-4-

compliance with the prison's grievance procedure, including its deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

The ODOC has a four step grievance procedure. First, an inmate must attempt to resolve his complaint by speaking to an appropriate staff member within three days of the incident. If the problem is not resolved verbally, the inmate must proceed to the second step and submit a Request to Staff (RTS). The RTS must be filed within seven days of the date of the incident. If dissatisfied with the response to the RTS, an inmate must file a grievance with the reviewing authority or, if a medical grievance, the correctional health services administrator, within fifteen days of the incident or the date of the response to the RTS, whichever is later. At the fourth step, an inmate wishing to challenge the reviewing authority or correctional health service administrator's response may file an appeal with the administrative review authority or chief medical officer within fifteen days of receiving the reviewing authority or correctional health services administrator's response. Only after obtaining a final ruling from the administrative review authority or chief medical officer has an inmate exhausted the Oklahoma prison grievance process.

The district court concluded Cannon had failed to exhaust his

administrative remedies because he failed to appeal to the administrative review authority or chief medical officer. We cannot agree. The record reveals Mason filed an RTS on March 5 challenging the $10.00 deducted from his account on February 17. The RTS was clearly untimely because it was filed more than seven days after the $10.00 was deducted from Cannon's account. Nevertheless, the RTS is deemed properly filed because Copple accepted the late filing and responded to the RTS on its merits. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

According to the prison, the next item it received from Cannon was the April 19 grievance filed with the administrative review authority. It was returned to Cannon unanswered because, *inter alia*, no grievance was submitted to the correctional health services administrator. However, in the April 19 grievance, Cannon claimed he had filed a grievance with the correctional health services administrator on March 18 concerning the $10.00 deduction. The prison has no record of this grievance. The district court did not resolve this factual discrepancy. If, as Cannon alleges, he filed the March 18 grievance (which would have been timely filed) and did not receive a response from the correctional health services administrator within thirty days, the prison's grievance procedure

-6-

allows him to send a grievance to the administrative review authority or chief medical officer with evidence of submission of the grievance to the correctional health services administrator. "The grievance submitted to the administrative review authority or chief medical officer may assert only that the inmate's grievance was not answered." (R. Vol. I at 39.) Cannon's April 19 grievance satisfied these requirements.

While we cannot say on the record before us that Cannon failed to exhaust his administrative remedies, we can confidently conclude Cannon's complaint fails to state an Eighth Amendment claim. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) ("We are free to affirm the rulings of a district court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning.") (quotations omitted); *see also* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim . . ., on its face, . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment prohibits prison officials from denying an inmate medical treatment due to a lack of funds or conditioning the provision of needed medical services upon an inmate's ability to pay. *See Martinez v. Zadroga*, 213

Fed. App. 729, 732 (10th Cir. 2007) (unpublished)[2]; *Monmouth County Corr.*

*Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Shapley v.*

*Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985). Cannon

does not allege he was denied medical treatment due to a lack of funds. In fact,

the record demonstrates he was seen by Dr. Stewart and was prescribed

medication.

Moreover, the prison's medical policy does not condition the provision of

medical services on an inmate's ability to pay for such services. It provides:

"Inmates will not be refused health care because of their financial status.

However, inmates will be charged a $2.00 copayment fee for each

inmate-initiated request for a medical, dental or optometric service and $2.00 for

each medication issued during an inmate-initiated visit." (R. Vol. I at 99.) It also

contains exceptions to the $2.00 copayment for certain medical services.[3] The

---

[2] Unpublished opinions are not binding precedent. 10th Cir. R. App. P. 32.1(A). We mention *Martinez* as we would opinions from another circuit, persuasive because of their reasoned analyses.

[3] Two exceptions to the $2.00 copayment are (1) "[m]edical provider initiated health care services" and (2) "prescription medications prescribed for asthma, . . . chronic obstructive pulmonary diseases [COPD], . . . [and] hypertension . . . ." (R. Vol. I at 100.) Cannon claims his February 12 doctor's visit was unrelated to his January 17, 2008 request for medical services and his February 12 doctor's visit was initiated by Dr. Stewart. He also alleges the medications he received on February 12 were to treat his asthma, COPD and hypertension. We disagree. Cannon did not list COPD as one of his chronic illnesses in his complaint. The record also shows Cannon filed a medical services request in which he specifically checked the box indicating he wished to be seen by the prison's medical staff. The medical services request form demonstrates Cannon's February 12 doctor's visit was conducted in response to that request. Also, the

fact the prison's policy requires inmates with adequate resources to pay a small

cost for their health care is not unconstitutional. *See Reynolds v. Wagner*, 128

F.3d 166, 173-75 (3d Cir. 1997).  As then-Judge Alito explained in *Reynolds*:

> If a prisoner is able to pay for medical care, requiring
> such payment is not deliberate indifference to serious
> medical needs.  Instead, such a requirement simply
> represents an insistence that the prisoner bear a personal
> expense that he or she can meet and would be required
> to meet in the outside world.

*Id*. at 174 (citation and quotations omitted).

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

medications he was prescribed on February 12 were Fosamax, folic acid and Metamucil. Fosamax is prescribed for osteoporosis, one of the conditions allegedly suffered by Cannon.  *See* http://www.webmd.com.  He was also prescribed folic acid, which assists the body in making healthy cells and treats such things as anemia and heart disease, and Metamucal which is commonly used to treat, *inter alia*, constipation, diarrhea, irritable bowel syndrome and hemorrhoids, the latter of which Cannon allegedly suffers.  *See id*. It does not appear, and Cannon has not shown, that these medications were prescribed for Cannon's alleged asthma and hypertension.  Thus, it seems neither exception to the $2.00 copayment applies.  In any event, an Eighth Amendment violation concerning medical charges only occurs if prison officials deny an inmate medical treatment due to a lack of funds or condition the provision of needed medical services upon an inmate's ability to pay, neither of which occurred here.